UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
BRICKLAYERS INSURANCE AND WELFARE
FUND, BRICKLAYERS PENSION FUND,
BRICKLAYERS SUPPLEMENTAL ANNUITY
FUND, BRICKLAYERS AND TROWEL TRADES
INTERNATIONAL PENSION FUND, NEW YORK
CITY AND LONG ISLAND JOINT
APPRENTICESHIP AND TRAINING FUND,
INTERNATIONAL MASONRY INSTITUTE, and
JACK ARGILA, in his fiduciary capacity as
Administrator and Chairman of Trustees,
BRICKLAYERS LOCAL 1, INTERNATIONAL
UNION OF BRICKLAYERS AND ALLIED CRAFT
WORKERS, and BRICKLAYERS LABOR
MANAGEMENT COMMITTEE,

Case No.

**COMPLAINT**

                      Plaintiffs,

     - against -

KING CONTRACTING GROUP NY INC,
BRETT STEINBERG, MEGA CONTRACTING
GROUP LLC, and "ABC BOND COMPANY #1"
THROUGH "ABC BOND COMPANY #2," the last
two names being fictitious and unknown to
Plaintiffs, being sureties furnishing payment bonds
on Myrtle Avenue Project where defendant King
Contracting Group NY Inc employed Local 1
Bricklayers,

                      Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

      Plaintiffs, by their attorneys, Doar Rieck Kaley & Mack, as and for their complaint against defendants, King Contracting Group NY Inc ("King"), Brett Steinberg ("Steinberg"), Mega Contracting Group LLC ("Mega"), and "ABC Bond Company #1" through "ABC Bond Company #2" (the "Sureties") allege as follows:

## JURISDICTION AND VENUE

1. This Court has original jurisdiction over this action under 28 U.S.C. § 1331, in that plaintiffs' action is brought against King and Steinberg under federal statutes, specifically Sections 515, 404 and 409 of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended (29 U.S.C. §§ 1145, 1104 and 1109), for King's failure to make employee benefit fund contributions and for Steinberg's breaches of fiduciary duty, respectively. Subject matter jurisdiction is specifically conferred on this Court pursuant to ERISA Sections 502(a)(2) and (3), and (g) (29 U.S.C. §§ 1132(a)(2) and (3), and (g)).

2. For the cause of action herein against King by plaintiff Bricklayers Local 1, International Union of Bricklayers & Allied Craft Workers ("Local 1") to recover unremitted dues checkoffs, subject matter jurisdiction is conferred on this Court pursuant to Section 301 of the Labor Management Relations Act ("LMRA") (29 U.S.C. § 185).

3. For the state common law cause herein against Steinberg for conversion, and the causes of action against Mega and the Sureties, supplemental jurisdiction is conferred on this Court pursuant to 28 U.S.C. § 1367, in that the common law causes of action are so related to the claims herein within the Court's original jurisdiction that they form part of the same case and controversy.

4. Venue is proper in the Eastern District of New York under ERISA Section 502(e)(2) (29 U.S.C. § 1132(e)(2)), in that the plaintiff union benefit funds are administered in this district.

## PARTIES

5. Plaintiffs, Bricklayers Insurance and Welfare Fund ("Welfare Fund") (of which the Vacation Fund is a part), Bricklayers Pension Fund ("Pension Fund"), Bricklayers Supplemental Annuity Fund ("Annuity Fund"), Bricklayers and Trowel Trades International Pension Fund ("IPF"), New York City and Long Island Joint Apprenticeship and Training Fund ("JATC"), and the International Masonry Institute ("IMI"), are each an "employee benefit plan" within the meaning of ERISA Section 3(3) (29 U.S.C. § 1002(3)), a "multiemployer plan" within the meaning of ERISA Section 3(37) (29 U.S.C. § 1002(37)), and a fiduciary within the meaning of ERISA Section 3(21)(A) (29 U.S.C. § 1002(21)(A)).

6. Jack Argila ("Argila") is the Chairman of Trustees, unpaid Administrator and a fiduciary within the meaning of ERISA Section 3(21)(A) (29 U.S.C. § 1002(21)(A)), of the Welfare Fund, Pension Fund, Annuity Fund and the JATC (collectively referred to as the "Local 1 Funds"). He is also a trustee of the IMI.

7. The trustees of the Local 1 Funds have authorized Argila to bring this action on their behalf, as have the trustees of the IPF and IMI.

8. As president of Local 1, Argila is authorized to sue to collect wage assignments that have not been remitted by employers to Local 1 and its parent, the International Union of Bricklayers & Allied Craft Workers ("I.U."). Argila is also a participant in and beneficiary of the Welfare Fund, Pension Fund, Annuity Fund, JATC, IPF and IMI (collectively referred to as the "Funds").

9. Local 1 is a labor organization within the meaning of LMRA Section 301 (29 U.S.C. § 185).

10. The Labor Management Committee ("LMC") is established and maintained under LMRA Section 302(c)(9) (29 U.S.C. § 186(c)(9)).

11. King is a New York corporation. At all times hereinafter mentioned, King was an employer maintaining offices at 12 Railroad Place, Belleville, New Jersey 07109.

12. Upon information and belief, Steinberg is domiciled in and transacts business in New York. Steinberg is the owner, president, chief executive officer, and day-to-day manager of King.

13. Mega is a New York limited liability company. At all times hereinafter mentioned, Mega was a general contractor maintaining offices at 48-02 25th Avenue, Suite 400, Astoria, New York 11103.

14. Upon information and belief, at all times relevant to this action "ABC Bond Company #1" through "ABC Bond Company #2" are sureties who issued payment bonds on contracts performed by the general contractor defendant (Mega) for which King was a subcontractor. Upon information and belief, at all times material hereto, the Sureties were, and still are, entities duly licensed and authorized by the New York State Department of Financial Services to transact business as sureties in New York State.

## BACKGROUND

15. King is a party to a project related agreement with Local 1 covering bricklayers (the "Agreement"). Under the Agreement, King agreed to make contributions at specified rates per hour worked by Local 1 bricklayers to pay for the cost of: (1) pension benefits provided by the Pension Fund, Annuity Fund and IPF; (2) medical benefits provided by the Welfare Fund; and (3) training provided by the JATC and IMI.

16. Under the Agreement, King is further obligated to transmit after-tax deductions from employee wages at a specified rate per hour to the Vacation Fund, which is a component of the Welfare Fund and covered by ERISA.

17. The Agreement also requires King to transmit after-tax hourly deductions from employee wages to the Funds for dues owed to Local 1 and the I.U.

18. King failed to make benefit contributions due and owing to the Funds, and wage deductions and other contributions due and owing to Local 1 and the LMC, respectively, for hours worked by Local 1 bricklayers during the period of May 1, 2023 through March 31, 2024 (the "Delinquency Period"), as determined by King's payroll records for the construction project at 778 Myrtle Avenue, Brooklyn, New York, where Mega was the general contractor ("Myrtle Avenue Project").

19. Prior to commencement of this action, demand was made to King and Mega for the monies owed to plaintiffs on the Myrtle Avenue Project, as detailed herein. To date, King and Mega have failed and refused to pay the monies demanded and duly owed to plaintiffs. Also to date, King and Mega have not disputed the hours of work by Local 1 bricklayers as detailed in King's payroll records, nor the amounts owed to plaintiffs for the Myrtle Avenue Project.

### FIRST CAUSE OF ACTION AGAINST KING FOR UNPAID CONTRIBUTIONS UNDER ERISA SECTIONS 1145 & 1132 and LMRA SECTION 301

20. Plaintiffs Argila, Local 1 and the Funds re-allege paragraphs 1 through 19 as if fully set forth herein.

21. As indicated by its payroll records, King owes the Funds $55,878.48 in unpaid contributions for hours worked by Local 1 bricklayers during the Delinquency Period on the Myrtle Avenue Project.

22. Despite demand for payment, King has failed to pay the amount owed.

23. For breach of the Agreement, King also owes interest on the amount owed.

## SECOND CAUSE OF ACTION AGAINST KING FOR UNREMITTED DUES CHECKOFFS AND UNPAID CONTRIBUTIONS UNDER LMRA SECTION 301

24. Plaintiffs Local 1 and the LMC re-allege paragraphs 1 through 23 as if fully set forth herein.

25. King owes Local 1 and the LMC unremitted dues checkoffs and unpaid contributions for hours worked by Local 1 bricklayers during the Delinquency Period on the Myrtle Avenue Project.

26. As indicated by its payroll records, King owes Local 1 and the LMC $6,443.03 in unremitted wage deductions for dues checkoffs and contributions for hours worked by Local 1 bricklayers during the Delinquency Period on the Myrtle Avenue Project.

27. Despite demand for payment, King has failed to pay the amount owed.

28. For breach of the Agreement, King also owes interest on the amount owed.

## THIRD CAUSE OF ACTION AGAINST STEINBERG FOR BREACH OF FIDUCIARY DUTY UNDER ERISA SECTION 409

### I.   Vacation Fund Component of Welfare Fund

29. Plaintiffs Argila and the Welfare Fund re-allege paragraphs 1 through 28 as if fully set forth herein.

30. The Welfare Fund includes a Vacation Fund component that provides vacation benefits to bricklayer participants. The participants pay for the Vacation Fund benefits by having after-tax monies deducted directly from their wages by their employer. The employers are obligated under the CBA to remit the Vacation Fund deductions to the Welfare Fund on a weekly basis.

31. Employee contributions to the Vacation Fund component of the Welfare Fund are "plan assets" of an ERISA employee welfare fund under 29 C. F. R. § 2510.3-102(a).

32. Steinberg manages the day-to-day activities and finances of King.

33. Steinberg is a fiduciary under ERISA Section 3(21)(A) (29 U.S.C. § 1002(21)(A)(i), (iii)), in that he exercises authority and control respecting management and disposition of plan assets of the Funds at King. Steinberg determines which creditors or King get paid, when they get paid, and in what order they get paid. Steinberg signs the checks for payment of creditors at King.

34. In breach of his fiduciary duty, Steinberg failed to segregate the Vacation Fund deductions and remit them to the Welfare Fund. Instead, upon information and belief, Steinberg commingled the Vacation Fund assets with King's general assets and used the Vacation Fund assets to pay expenses and general creditors of King.

35. Specifically, based on King's payroll records, $8,648.24 in Vacation Fund contributions should have been deducted from the wages of Local 1 members and paid to the trustees of the Vacation Fund for hours worked by Local 1 bricklayers during the Delinquency Period on the Myrtle Avenue Project.

36. By failing to remit contributions due and owing to the Vacation Fund, Steinberg committed a series of breaches of fiduciary duty under ERISA Section 404, 29 U.S.C. § 1104, and thereby rendered himself personally liable for said unpaid contributions under ERISA Section 409 (29 U.S.C. § 1109).

37. Steinberg is liable to the Vacation Fund for: (a) damages of $8,648.24 in unpaid Vacation Fund deductions and any losses to the Vacation Fund for each breach of Steinberg's fiduciary duty, (b) restitution to the Vacation Fund, including any profits made by Steinberg and King through use of Vacation Fund assets, and (c) such other equitable or remedial relief as the court may deem appropriate.

II.   Welfare Fund

38. Plaintiffs Argila and the Welfare Fund re-allege paragraphs 1 through 37 as if fully set forth herein.

39. The Trust Agreement of the Welfare Fund provides at Article VIII, Section 1(B): "Title to all monies paid into and/or owing the Fund shall be vested in and remain exclusively in the Trust of

6

the Fund." Thus, employer contributions to the Welfare Fund, which are separate and apart from monies owed to the Vacation Fund, are Welfare Fund assets.

40. Based on King's payroll records, King failed to make $20,909.39 in unpaid contributions to the Welfare Fund for hours worked by Local 1 bricklayers during the Delinquency Period on the Myrtle Avenue Project.

41. By the failure to pay contributions due and owing to the Welfare Fund, Steinberg committed a series of breaches of fiduciary duty under ERISA Section 404 (29 U.S.C. § 1104), and thereby rendered himself personally liable for said unpaid contributions under ERISA Section 409 (29 U.S.C. § 1109).

42. Steinberg is liable to the Welfare Fund for: (a) damages of $20,909.39 in unpaid contributions to the Welfare Fund and any losses to the Welfare Fund for each breach of Steinberg's fiduciary duty, (b) restitution to the Welfare Fund, including any profits made by Steinberg and King through use of Welfare Fund assets, and (c) such other equitable or remedial relief as the court may deem appropriate.

    III.    International Pension Fund

43. Plaintiffs Argila and the IPF re-allege paragraphs 1 through 42 as if fully set forth herein.

44. Section 4.1 (a) of the Agreement and Declaration of Trust of the IPF provides: "Title to all monies paid into and/or due and owing the Trust Fund shall be vested in and remain exclusively in the Trustees of the Fund." Thus, employer contributions to the IPF are IPF assets.

45. Based on King's payroll records, King failed to make $2,947.81 in contributions to the IPF for hours worked by Local 1 bricklayers during the Delinquency Period on the Myrtle Avenue Project.

46. By failing to pay contributions due and owing to the IPF, Steinberg committed a series of breaches of fiduciary duty under ERISA Section 404 (29 U.S.C. § 1104), and thereby rendered himself personally liable for said unpaid contributions under ERISA Section 409 (29 U.S.C. § 1109).

47. Steinberg is liable to the IPF for: (a) damages of $2,947.81 for unpaid contributions to the IPF and any losses to the IPF for each breach of Steinberg's fiduciary duty, (b) restitution to the IPF, including any profits made by Steinberg and King through use of IPF assets, and (c) such other equitable or remedial relief as the court may deem appropriate.

    IV.    <u>Pension Fund</u>

48. Plaintiffs Argila and the Pension Fund re-allege paragraphs 1 through 47 as if fully set forth herein.

49. Section 4.1 of the Pension and Annuity Plan of the Pension Fund provides: "Title to all monies paid into and/or owing the Fund shall be vested in and remain exclusively in the Trust of the Fund." Thus, employer contributions to the Pension Fund are Pension Fund assets.

50. Based on King's payroll records, King failed to make $11,578.43 in contributions to the Pension Fund for hours worked by Local 1 bricklayers during the Delinquency Period on the Myrtle Avenue Project.

51. By failing to pay contributions due and owing to the Pension Fund, Steinberg committed a series of breaches of fiduciary duty under ERISA Section 404 (29 U.S.C. § 1104), and thereby rendered himself personally liable for said unpaid contributions under ERISA Section 409 (29 U.S.C. § 1109).

52. Steinberg is liable to the Pension Fund for: (a) damages of $11,578.43 in unpaid contributions to the Pension Fund and any losses to the Pension Fund for each breach of Steinberg's fiduciary duty, (b) restitution to the Pension Fund, including any profits made by Steinberg and King through use of Pension Fund assets, and (c) such other equitable or remedial relief as the court may deem appropriate.

    V.    <u>Annuity Fund</u>

53. Plaintiffs Argila and the Annuity Fund re-allege paragraphs 1 through 52 as if fully set forth herein.

54. Section 4.1 of the Supplemental Annuity Plan of the Annuity Fund provides: "Title to all monies paid into and/or owing the Fund shall be vested in and remain exclusively in the Trust of the Fund." Thus, employer contributions to the Annuity Fund are Annuity Fund assets.

55. Based on King's payroll records, King failed to pay $10,334.05 in contributions to the Annuity Fund for hours worked by Local 1 bricklayers during the Delinquency Period on the Myrtle Avenue Project.

56. By failing to pay contributions due and owing to the Annuity Fund, Steinberg committed a series of breaches of fiduciary duty under ERISA Section 404 (29 U.S.C. § 1104), and thereby rendered himself personally liable for said unpaid contributions under ERISA Section 409 (29 U.S.C. § 1109).

57. Steinberg is liable to the Annuity Fund for: (a) damages of $10,334.05 in unpaid contributions to the Annuity Fund and any losses to the Annuity Fund for each breach of Steinberg's fiduciary duty, (b) restitution to the Annuity Fund, including any profits made by Steinberg and King through use of Annuity Fund assets, and (c) such other equitable or remedial relief as the court may deem appropriate.

## FOURTH CAUSE OF ACTION AGAINST STEINBERG FOR CONVERSION

58. Plaintiff Local 1 re-alleges paragraphs 1 through 57 as if fully set forth herein.

59. The monies deducted from Local 1 members' wages for union dues should have been segregated from King's and Steinberg's general assets.

60. Said monies should have been segregated and remitted to Local 1.

61. Based on King's payroll records, $6,035.98 in dues deductions of Local 1 members were not remitted to Local 1 for the Delinquency Period on the Myrtle Avenue Project.

62. Steinberg failed to segregate and remit said dues deductions to Local 1. Instead, upon information and belief, Steinberg commingled them with King's general assets and used these Local 1 assets to pay King's expenses and general creditors.

63. Steinberg unlawfully converted these monies and is therefore personally liable to Local 1 for $6,035.98 in unremitted dues checkoffs.

### FIFTH CAUSE OF ACTION AGAINST KING
### FOR ACCOUNT STATED

64. Plaintiffs Argila, Local 1 and the Funds re-allege paragraphs 1 through 63 as if fully set forth herein.

65. Prior to commencement of this action, King was presented with a statement setting forth the amounts owed for the Myrtle Avenue Project.

66. King retained the said statement and did not object or note any exception to the amount stated in the statement as due and owing for the Myrtle Avenue Project.

67. To the contrary, King affirmatively noted its agreement with the amounts claimed by plaintiffs for the Myrtle Avenue Project in the statement, and King expressly agreed in writing to pay same by August 31, 2024.

68. King failed to pay the amounts owed as it promised to do, by August 31, 2024.

69. Based on the foregoing, plaintiffs set forth a cause of action against King for Account Stated.

### SIXTH CAUSE OF ACTION AGAINST KING
### FOR BREACH OF CONTRACT

70. Plaintiffs Argila, Local 1 and the Funds re-allege paragraphs 1 through 69 as if fully set forth herein.

71. Based on the foregoing, plaintiffs set forth a cause of action against King for Breach of Contract.

### SEVENTH CAUSE OF ACTION AGAINST
### MEGA AND THE SURETIES
### FOR CLAIMS ON PAYMENT BONDS

72. Plaintiffs Argila, Local 1, the LMC and the Funds re-allege paragraphs 1 through 71 as if fully set forth herein.

73. King did not pay contributions and remittances owed to the Funds, Local 1 and the LMC for hours worked by Local 1 bricklayers on the Myrtle Avenue Project.

74. Local 1 bricklayers supplied labor required for the performance of defendant Mega's contracts for the Myrtle Avenue Project, and they are therefore intended beneficiaries of the payment bonds furnished by the defendant Sureties for the Myrtle Avenue Project.

75. In accordance with the terms of the payment bonds issued for the Myrtle Avenue Project, the Sureties are obligated to pay the monies owed to plaintiffs for benefit contributions and unremitted wage deductions, which King has failed to pay.

76. Accordingly, the Sureties are liable herein to pay plaintiffs' claims against the payment bonds for the Myrtle Avenue Project for unpaid benefit contributions and unremitted wage deductions for said Myrtle Avenue Project.

## EIGHTH CAUSE OF ACTION AGAINST MEGA UNDER NEW YORK LABOR LAW § 198-e

77. Plaintiffs Argila, Local 1, the LMC and the Funds re-allege paragraphs 1 through 76 as if fully set forth herein.

78. King did not pay contributions and remittances owed to the Funds, Local 1 and the LMC for hours worked by Local 1 bricklayers on the Myrtle Avenue Project.

79. Local 1 bricklayers supplied labor required for the performance of the Mega's contracts on the Myrtle Avenue Project.

80. As the general contractor, Mega is liable for the said unpaid benefit contributions and unremitted wage deductions for said Myrtle Avenue Project under New York Labor Law § 198e.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiffs demand Judgment as follows:

I. In favor of Argila, Local 1 and the Funds, and against King under ERISA and the LMRA on the First Cause of Action as follows:

    A. For unpaid contributions owed to the Funds, in the amount of $55,878.48 (ERISA Section 502(g)(2)(A));

11

B. For interest on unpaid contributions (ERISA Section 502(g)(2)(B));

C. For the costs and disbursements of this action (ERISA Section 502(g)(2)(D));

F. For attorneys' fees and costs of this action (ERISA Section 502(g)(2)(D)); and,

G. For such other legal or equitable relief as this Court deems appropriate (ERISA Section 502(g)(2)(E)).

II. In favor of Local 1 and the LMC, and against King, on the Second Cause of Action under the LMRA as follows:

A. For unremitted dues owed Local 1 and unpaid contributions owed the LMC in the amount of $6,443.03;

B. For interest on said delinquent dues checkoffs and contributions owed to Local 1 and the LMC;

C. For the court costs and disbursements of this action; and,

D. For attorneys' fees.

III. In favor of Argila, the Welfare Fund, IPF, Pension Fund and Annuity Fund, and against Steinberg, on the Third Cause of Action for breaches of fiduciary duty under ERISA Section 409 (29 U.S.C. § 1109) as follows:

A. For damages of $54,417.92 in unpaid contributions to the Funds and for losses to the Funds for each breach of Steinberg's fiduciary duty, including interest on the unpaid contributions;

B. For restitution to the Funds, including any profits made by Steinberg and King through use of assets of the Funds;

C. For such other equitable or remedial relief as the court may deem appropriate; and,

D. For attorneys' fees pursuant to statute.

IV. In favor of Local 1, and against Steinberg, on the Fourth Cause of Action for Conversion as follows:

A. For damages in the amount of $6,035.98;

   B. For interest on the monies converted; and,

   C. For the costs and disbursements of this action.

 V. In favor of Argila, Local 1 and the Funds, and against King on the Fifth Cause of Action as follows:

   A. For damages in the amount of $62,321.52;

   B. For pre-judgment interest on said amount owed; and,

   C. For the costs and disbursements of this action.

 VI. In favor of Argila, Local 1 and the Funds, and against King on the Sixth Cause of Action as follows:

   A. For damages in the amount of $62,321.52;

   B. For pre-judgment interest on said amount owed; and,

   C. For the costs and disbursements of this action.

 VII. In favor of Argila, Local 1, the LMC and the Funds, and against Mega and the Sureties on the Seventh Cause of Action for Payment on the Payment Bonds as follows:

   A. For damages in the amount of $62,321.52 pursuant to the labor and materials payment bonds furnished in connection with the Myrtle Avenue Project, including unpaid benefit contributions and unremitted wage deductions; and,

   B. For pre-judgment and post-judgment interest on the amount owed at the rate of 9% per annum pursuant to the New York CPLR.

 VIII. In favor of Argila, Local 1, the LMC and the Funds, and against Mega on the Eighth Cause of Action for monies due and owing on the Myrtle Avenue Project under Labor Law § 198-e, as follows:

   A. For damages in the amount of $62,321.52 for hours worked by Local 1 bricklayers on the Myrtle Avenue Project; and,

   B. For pre-judgment and post-judgment interest on the amount owed at the rate of 9% per annum pursuant to the New York CPLR.

Dated: New York, New York  
September 25, 2024

DOAR RIECK KALEY & MACK

By: _____  
217 Broadway, Suite 707  
New York, New York 10007  
(212) 619-3730  
*Attorneys for plaintiffs*  
By: Joel A. Siegel, Of Counsel

14